[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 17, 2010
JOHN LEY
CLERK

_____

No. 09-14670
Non-Argument Calendar
_____

D. C. Docket No. 05-00242-CR-J-32-TEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DOUGLAS VINCENT KEECHLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 17, 2010)

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Douglas Vincent Keechle appeals his 24-month sentence imposed upon

mandatory revocation of his supervised release, pursuant to 18 U.S.C. § 3583(g).

After review, we affirm.

## I.  BACKGROUND

In 2005, Keechle pled guilty to possession of a firearm by a convicted felon and was sentenced to 46 months' imprisonment followed by three years' supervised release.  On February 3, 2009, Keechle began his supervised release in Ohio.

On June 25, 2009, Keechle's probation officer petitioned for revocation of his supervised release, alleging Keechle had committed four violations: (1) new criminal charges in Ohio arising from his reckless driving of a stolen vehicle while intoxicated on May 22, 2009; (2) new criminal charges in Florida of grand theft auto, possession of marijuana and drug paraphernalia, and resisting an officer on June 13, 2009; (3) new criminal charges in Florida of burglary and possession of burglary tools on June 10, 2009; and (4) travel outside the district without permission when, on or before June 3, 2009, Keechle went from Ohio to Florida.

## A.    Probation Officer's Sentencing Memorandum

The probation officer prepared a sentencing memorandum advising the district court, inter alia, that: (1) a finding that Keechle violated his supervised release by possessing a controlled substance would require the district court to

2

revoke supervised release pursuant to 18 U.S.C. § 3583(g) and impose a sentence not to exceed two years' imprisonment; (2) because Keechle was charged with a Grade B violation, pursuant to U.S.S.G. § 7B1.1(a)(2), a finding of a violation would require the district court to revoke supervised release, pursuant to U.S.S.G. § 7B1.3(a)(1), and impose a custody term; and (3) when a defendant has a Grade B violation and an original criminal history category of V, a range of 18 to 24 months' imprisonment is recommended by U.S.S.G. § 7B1.4(a).

The memorandum also summarized the events underlying each of the alleged violations. According to the memorandum, on May 22, 2009, Ohio police were notified by a gas station clerk that Keechle, who was about to drive away from the station, appeared to be intoxicated. An officer observed Keechle drive out of the parking lot and weave across the center line three times. When the officer attempted to perform a traffic stop, Keechle sped up, reaching a top speed of 100 miles per hour, ran a stop sign and nearly caused several accidents. The officer kept a safe distance and watched as Keechle lost control of his car, crashed into two fences and hit a tree. Before the officer could reach the accident scene, Keechle fled on foot.

Officers later learned that the car Keechle was driving was stolen. They also received a call from a woman whose car windows had been broken. The woman

said that Keechle had called her and admitted breaking her windows and told her that he needed a ride because he was running from the police.

On June 13, 2009, a Florida sheriff's deputy was investigating a suspicious vehicle and found Keechle asleep in the driver's seat with the keys in the ignition. Keechle was slumped over the wheel and unresponsive. The deputy checked the car's tag and discovered the car was stolen in Ohio. When the deputy pulled Keechle out of the car, Keechle began kicking and resisting. Keechle broke free and led the deputy on a brief foot chase before being subdued. The deputy found two baggies of marijuana in Keechle's right front pocket. A search of the car uncovered a crack pipe, and a purse and other items belonging to a woman. Deputies contacted the woman and learned that the items were stolen from her car on June 12, 2009, and that she had filed a report.

The memorandum indicated that until Keechle was arrested for the new criminal offenses, Keechle was actively participating in treatment, had no positive drug screens and was in compliance with all terms of his supervised release. The probation officer recommended an 18-month sentence, followed by two years of supervised release because Keechle was involved with criminal activity within three months of his release from prison. Keechle did not object to the probation officer's sentencing memorandum.

4

**B.      Revocation Hearing and Sentencing**

At the revocation hearing, Keechle admitted that he pled guilty to marijuana possession and resisting arrest in Ohio in July 2009 (i.e., partial admission to second violation) and that he traveled outside the district (fourth violation).  The government stated that it would not press the two remaining violations alleged in the petition for revocation, but would discuss them in addressing the 18 U.S.C. § 3553(a) factors.  The district court concluded that Keechle's partial admission lowered his violation from the sentencing memorandum's recommended Grade B to a Grade C and reduced his guidelines range from 18 to 24 months' to 7 to 13 months' imprisonment and that his statutory maximum sentence was two years' imprisonment.

In mitigation, Keechle argued that he was an impulsive and "troubled young man," with "almost . . . irresistible urges that he has to sort of lash out" and "[h]e acts upon it and runs away."  Keechle pointed to his years of drug and alcohol abuse, which contributed to many of his prior arrests and convictions.  Keechle stressed that he initially complied with his supervision requirements and was trying to get mental health treatment, but had not yet been successful.  He became depressed, "[got] back into drugs in very short order," and, consistent with his past pattern, ran away in someone else's car and got caught with drugs.  Keechle noted

5

that, while serving his federal 46-month sentence, he was housed in a penitentiary, where he fought with gang members and was placed in a special housing unit. Keechle argued that he should not be placed in a penitentiary and asked for a recommendation to a facility where he could get mental health treatment.

The district court noted the charges listed in the petition for revocation. The court acknowledged Keechle's need for help, but emphasized the seriousness of Keechle's supervised release violations, as follows:

> So, you know, I understand what you're saying, that you need help. And I can appreciate that. But you can also appreciate how a person shouldn't be doing any of that anyway, but especially a person on supervised release, who has a probation officer, has obligations.
> So, this is pretty serious stuff. I mean, this isn't . . . that you were late for your curfew or that you were -- this is serious stuff. This isn't just a little bit. And so that's the problem.

In addressing Keechle's "history and characteristics," the government recounted the facts underlying the charges in the petition for revocation. The government pointed out that Keechle's original presentence investigation report reflected a pattern of similar offenses in which Keechle led police on car or foot chases or was found by police asleep in cars. Many of these offenses involved alcohol or drugs. The government asked the district court to impose the statutory maximum of two years to protect the public while Keechle got substance abuse treatment in prison.

In response, Keechle admitted that he had at least ten drug- or alcohol-

related arrests and had a substance abuse problem that manifested itself in patterns in his criminal history. Keechle contended that he needed long-term treatment.

The district court stated that the § 3553(a) factors focus not only on the defendant's history and characteristics, but also on the need to reflect the seriousness of the offense, provide punishment, deterrence and protection to the public. The district court stressed that Keechle was "unable to not commit crimes" even while under both state and federal supervision. The district court stated that, while it was not holding Keechle legally accountable for all of the recent criminal activity, it found the pattern "very troubling." The district court explained that even if Keechle's conduct was "fueled by drug addiction [and] perhaps mental health issues," Keechle "as he currently is operating, is a danger the community" and the court had to consider the needs to protect the public and for deterrence. The district court stated that given "the limited range of options available" the court was "going to try to accomplish both of those things." The district court noted that a further term of supervision "probably doesn't make much sense" because Keechle faced state sentencing once he finished his federal custody.

Given all of these considerations, the district court concluded that the statutory maximum sentence was "the correct sentence." The district court recommended that Keechle receive mental health and intensive drug treatment

while incarcerated and, if possible, that Keechle be housed at Butner. Accordingly, the district court imposed a 24-month sentence, with no supervised release. Keechle filed this appeal.

## II. DISCUSSION

"Under 18 U.S.C. § 3583(e), a district court may, upon finding by a preponderance of the evidence that a defendant has violated a condition of supervised release, revoke the term of supervised release and impose a term of imprisonment after considering certain factors set forth in 18 U.S.C. § 3553(a)." United States v. Sweeting, 437 F.3d 1105, 1107 (11th Cir. 2006).[1] However, under § 3583(g), revocation of supervised release and the imposition of some term of imprisonment are mandatory where, as here, the defendant violated supervision by possessing a controlled substance. See 18 U.S.C. § 3583(g).

The district court also must consider the policy statements in Chapter 7 of the Sentencing Guidelines, one of which provides recommended, non-binding ranges of imprisonment. United States v. Silva, 443 F.3d 795, 799 (11th Cir.

---

[1]The relevant § 3553(a) factors that the court must consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence; (3) the need to protect the public; (4) the need to provide the defendant with educational or vocational training or medical care; (5) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwanted sentencing disparities; and (7) the need to provide restitution to victims. See 18 U.S.C. § 3583(e)(cross referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7)).

8

2006). The parties do not dispute that, with a Grade C violation and a criminal history category of V, Keechle's recommended guidelines range under advisory Chapter 7 was 7 to 13 months' imprisonment. See U.S.S.G. § 7B1.4(a). Because Keechle was on supervised release for a Class C felony, his sentence could not exceed two years' imprisonment. See id. § 3583(e)(3), (g).

We review a sentence imposed upon revocation of supervised release for reasonableness. Sweeting, 437 F.3d at 1106-07. A reasonableness review is synonymous with the abuse of discretion standard. Gall v. United States, 552 U.S. 38, 46, 128 S. Ct. 586, 594 (2007) (explaining that a reasonableness review should "take into account the totality of the circumstances, including the extent of any variance from the Guideline range"). The party challenging the sentence has the burden to show it is unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

Here, Keechle has not shown that his 24-month sentence was unreasonable. Within four months of completing his 46-month sentence, Keechle was engaging in the same kind of conduct that has been getting him in trouble since he was a teenager. Keechle admitted that he is a troubled man who acts impulsively, which supports the district court's observation that Keechle appears unable to keep himself from engaging in this kind of criminal activity. Furthermore, as the district

9

court pointed out, Keechle's admitted conduct, possession of marijuana and resisting arrest, are not minor or technical violations of his supervised release.

The record does not support Keechle's claim that the district court did not adequately explain the reasons for imposing a sentence above the advisory guidelines range. Likewise, the record does not support Keechle's claim that the district court considered only two of the § 3553(a) factors – the need for deterrence and to protect the public – to the exclusion of the other factors.[2] The dialogue between the court and the parties shows that the court fully and carefully considered Keechle's arguments in mitigation, including Keechle's substance abuse and mental health problems and his need for treatment. The district court explicitly acknowledged these factors, but balanced them against the other factors. Under the totality of the circumstances, the district court was well within its discretion to conclude that the mitigating factors Keechle stressed were outweighed by the seriousness and dangerousness of his post-release conduct and the need to protect the public and afford deterrence. See United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) ("[T]he weight to be accorded any given § 3553(a)

---

[2]The district court considered the § 3553(a) factors. Thus, we do not address the continuing viability of the statement in United States v. Brown, 224 F.3d 1237, 1241 (11th Cir. 2000), that "when revocation of supervised release is mandatory under 18 U.S.C. § 3583(g), the statute does not require consideration of the § 3553(a) factors," after United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

factor is a matter committed to the sound discretion of the district court."

(quotation marks omitted)).[3]

**AFFIRMED.**

---

[3]To the extent Keechle argues that his sentence is unreasonable because he is currently housed in a penitentiary and not at Butner, we reject this claim. See 18 U.S.C. § 3621(b) (giving the Bureau of Prisons ("BOP") the authority and the discretion to designate a federal prisoner's place of confinement and providing that sentencing court recommendations are not binding on the BOP).